Good morning, Your Honors. Richard Keller on behalf of the Plaintiffs and the Policies Action. So who do you represent? I represent the employees, Ward. Ward. So it's interesting, the representatives of the employees are wearing white shirts, and the employers' representatives are wearing blue shirts. Sometimes we're going to shake it up, Your Honor. I would have bet it was the other way around. You know, sometimes they call, you know, wolf in sheep's clothes, we have to be careful. In this situation, Your Honor, Ralphs and a number of its managers have been indicted or pled guilty to violating criminal RICO laws. And the action that we brought, the class-sort civil RICO damages arising from the same conspiracy, albeit against Ralph's co-conspirators. The civil remedy in RICO is integral to and part of Congress's enactment of the RICO laws. Now, in this case, it's a very unusual situation, because this entire appeal seems to hinge on the scope and meaning of actions. And I've been doing a poll, Ward, we've had about 100 appeals. It's the first time the situation has come up where the judge who offered the opinion is the one we're going before and saying what the opinion actually means. Well, it's kind of interesting, but, you know, as I went over all these materials, I think where the critical point is, is this really a RICO case? Was there a pattern? And, you know, there's a lot of talk about the Atkins and all of these other cases and whether we get preemption. But I just kind of take a practical look at it, and I'd like to hear about whether there's a pattern in practice. Okay. And, Your Honor, I think that, you know, I will answer your question. I think that's a question that might be better served later when this is remanded, I hope. But the pattern of practice is that, number one, as we have alleged, and if we could further allege if there's a problem down the road, this activity started on a number of prior occasions where they engaged in the same type of activity of falsifying employee information going back years. The pattern started in this particular case. Now, is that in the record currently? I believe it's in the record. And if it's not in the record, that's something which we could clearly allege in the complaint if we had the opportunity to amend. And, of course, that's the whole problem here with that issue being raised by the respondents because it's in a way premature. Because, again, but anyway, the answer is that is what occurred. I'm not sure whether or not it is in the record. Well, the complaint, let me just follow up on Judge Fletcher's question. The complaint alleges predicate acts from September 30th, 2003 to February 29th, 2004, which is a period of about five months. And we have a number of cases that say that that short a time period is not sufficient to demonstrate a continuity of a pattern or practice, even if there's a little bitty short pattern or practice. How do you distinguish those cases? Well, I distinguish them in a couple of ways. The first way, Your Honor, is that that's a fact-based inquiry, which I think is better left beyond the motion to dismiss. Second of all — But that's not what we allege is five months. Well, it's been alleged, I think, more than five months because what it was alleged, first of all, that it started in, I believe it was September or August of 2003 that this — they began this whole process of looking to exclude — bringing workers with the false IDs. They implemented it over time. And not only that, but it went through, I think it was February or March. But beyond that point, they continued this conspiracy by obstructing the investigation by the U.S. Attorney's Office. So this pattern, this conspiracy, kept going. It kept going well beyond a four-month period. Is that alleged in your complaint? Yes, I believe it is, Your Honor. But it's not alleged. Those don't allege predicate acts, those paragraphs that talked about Rouse's attempts to conceal the nature and extent of the fraud. And I'm not sure that counts under our Wollersheim case, the religious technical center versus Wollersheim. The pattern of activity has to be significant in length. Well, and again, Your Honor, that what I'm saying that happened here, you're talking about the length of time. The predicate act started in, we allege, September of 2003, and that's on paragraph 16, that there was this conspiracy that started to take illegal workers, essentially taking workers with false security cards, bringing them in. And then that goes on from September through January. And again, through 2004, this process continues, which I think is in paragraph 20. And what we're talking about here, again, is that the enterprise, at a minimum, started around, this is what we allege in, I believe it's paragraph 30, that we're talking about from June of 2003, where we start this whole process. Counsel, let me take you back to the more fundamental question. What indicator do we have that Congress intends that a RICO claim that overlaps or encompasses or is similar to or the same as a series of unfair labor practices is intended to be able to be pursued in a duplicate way? That is why the labor laws are not exclusive in that situation. And I think the answer, Your Honor, is that we're not dealing here with the situation, first of all, of classic preemption. It's really a question of looking them in parallel. There's no reason, for instance, that RICO itself has its own independent considerations. RICO is enacted after the NLRA. That's right. But the NLRA is normally exclusive when the acts complained of constitute or may constitute an unfair labor practice. And so I guess what I'm looking for is what evidence we have in legislative history or statutory terminology or otherwise that when Congress enacted RICO, it intended to change that rule insofar as RICO claims might be alleged. Okay. I think that if we go back, first of all, I think the context in which Your Honor is stating with the law on preemption is not quite what the court did in Smith and other cases where the issue is whether or not there is no way to enforce the RICO claim without having something to be determinative solely by and dependent upon the NLRA. So, for instance, in Atkins, the situation was that the claim was there's a collective bargaining agreement that is being negotiated in bad faith. Here the difference is that there could be a situation, which we probably could have happened here, that Ralphs could have hired legal workers, for instance. Now, the fact that Ralphs engaged in this civil conspiracy which subjected them to criminal penalties, the civil penalties are part of that whole enforcement process as well. The intent behind civil RICO is to give additional punch and to give an additional compensation for the victims of civil RICO. So the interests are very strong here of what civil RICO is trying to accomplish. So the strength and the congressional intent of RICO is so strong that I don't think it's even considering the issue about NLRA. The defense in their supplemental presentation said that we couldn't prove this case without proving that there is an unfair labor practice. And the answer to that question is actually we can because the predicate act here is of wire fraud, of using false securities, are independently illegal without reference to the NLRA. The fact that the workers themselves have damages because, as our argument is, if Ralphs and the conspirators did not engage in this condo, they would have no choice but to hire our workers because they want to keep their stores open, that's not an unfair labor act. For instance, if Ralphs had decided to hire workers legally and my clients didn't have the opportunity to get a job, that wouldn't give them this cause of action. This cause of action is grounded in RICO and the congressional intent of giving trouble damages shows the strong intent that they want to prevent this conduct by having this type of civil enforcement. So there is nothing in the law which suggests that the NLRA trumps civil RICO when there is a civil RICO claim which can exist independent of the NLRA. And that really is the gravity here. This is where we come back to it. We come back to the whole idea that this is not a supremacy clause type case because we're not dealing with state and federal. We're dealing with coexistence of statutes. We have a subsequently issued specific statute in RICO which has strong congressional intent to prevent the RICO conduct that's out there through both criminal, which they enforce, and civil. And in fact, if you have a criminal prosecution, that does not bar a civil. Your time's out, counsel. Thank you, Your Honor. Good morning, Your Honors. Zachary Fessman for Kroeber and Gray's son and the others. And please, the Court. I think on the preemption issue, let me start there. I think on the preemption issue, I would ask the Court to bear in mind the pervasive connection between civil RICO allegations here and the labor dispute. Yes, I understand that, counsel, but there are claims of false identity, of false use of Social Security numbers. This is not a typical labor issue. No, those are not. Those are not, Judge Bletchley. So turn your attention to whether or not this satisfies RICO. Well, surely. But let me just say the plaintiffs have never claimed to be direct victims of false identity. They never had their identity stolen. They were not victims of mail or wire fraud. The only injury they allege is that this prolonged the lockout, that the lockout ended up being too long by virtue of these crimes that they allege and some of which we've pled guilty to or else has pled guilty to. So I don't think that this can be divorced from the lockout. That's the central point. They're not claiming to be victims. Indeed, the approximate cause of all of their injuries is the lockout. They allege the lockout went on too long. They should receive lost wages by virtue of being out of work under the lockout. I don't understand how that does not end up being a claim that the lockout was unlawful and, therefore, this is an unfair labor practice that falls right under Hopkins. Well, it may be an unfair labor practice, but it seems to me that if we're looking at the things which the NLRB should be very concerned about, which is bargaining and those types of things, certainly false, all of this false stuff that they did is a separate, very criminal conduct, which you're not necessarily getting in the NLRA context at all. No question. No question. You're right, Judd. But, you know, let me just make clear also we were never indicted for civil legal violations, despite counsel's statement to that effect. We were indicted for a lot of things, but we were not indicted for that and we never pled guilty to that in any sense of the word. Well, you made a deal. Pardon? You made a deal. Well, we did, absolutely. We pled guilty to five pounds and... I mean, who was crazy enough to concoct something like this? Well, that's a good question. I figured they could get away with it. That's a good question. Our position has been that although we pled guilty that this was not corporate policy, that these were the acts of some of our managers, some of them were indeed indicted for this as well, and of the people who were indicted, two pled guilty on the eve of trial and three others were tried for it and were acquitted. So I'm not sure where that leaves us, but we don't think that this was all our policy. On the other hand, we accepted responsibility for this. This did happen. We don't think much of it happened. That's not in the record, and I can tell you what we found if you're interested. No, we're not. I didn't think so. They'll read your books. But the point is we did accept responsibility for it. We paid a very large fine. We paid a $20 million fine, and more to the point, we created a $15 million restitution fund to provide relief to the unions and the employees who claimed that they were hurt by this lockout, which relates directly to the question of false identity. Yes, but not all of the defendants here were parties to that agreement. Is that correct? Not all the defendants were parties to that. That's correct. Okay. So we still need to solve the problem with respect to the defendants that were not parties. Well, I think that that's right. But my point on that one is that we have resolved these issues with the unions on behalf of the plaintiff class, and they agreed not to contest this. And I think it goes back again to the question of how were they injured. They claimed we were injured because of the lockout. Let me ask you to respond to opposing counsel's statements concerning the length of time during which the predicate acts took place, and specifically the assertion that that's not an appropriate basis for us to make a decision because of the posture of the case. Is that an appropriate basis of a decision, and what is your position on the continuity requirement? I think it is. First of all, I think it is absolutely an appropriate basis to make a decision. Helen's plaintiffs below were given leave to amend on three occasions. Judge Schiavelli was certainly not niggardly in saying, you know, get out of my courtroom, this is not bang the gavel, thank you for coming. He allowed them to amend again and again and again. There have been three amended complaints, and it's only the last one that was thrown out. I agree, Judge, with the tenor of your questions. It seems to me that the predicate acts here, false identity and all the other acts, occurred only during the course of the labor dispute, and that is there's no question how long the labor dispute lasted. It lasted some four and a half months. And I think under the court's rulings, not only this court but every other appellate court, actions during a single labor dispute, particularly actions that last for that limited period of time,  What is your response to the assertion that the later alleged attempts to cover up the wrongdoing should be tacked on to that period of time? I don't think that that's warranted. We briefed that, and I think that there's no law that supports that in terms of the predicate. Is it because it's not part of the pattern? Right. Absolutely. And to the extent that there's an attempt to plead open into continuity based on actions that are alleged in the complaint, as Your Honor pointed out, those are not in the record, and they go back 20 years, that somehow somewhere along the way there's almost hearsay. Well, conspiracies continue during the course of the cover-up of the conspiracy. Well, that is what's alleged. I think the laws to the contrary, I think the predicate acts themselves are the real timing issue for closed-end continuity in civil reco. I think that that's fairly clear. I would ask that in terms of looking at the National Labor Relations Act issues, I would ask that Your Honor bear in mind that the issue that law strikes and lockouts is the core of the National Labor Relations Act. If we're submitting to a jury the notion that this lockout was unlawful, that this lockout went on too long, I think the uniformity that Congress wanted in the federal labor laws goes out the window. Ninety-four district courts, I don't know how cases like that are going to be tried. And I would say the National Labor Relations Board has ruled on many occasions, this is a partial lockout. You only lock out part of your workforce or you hire back your workers. Those are the claims they're making. You guys are committing an unfair labor crime. Yeah, but did they have lockouts where the employer went ahead and brought back its employees, used false Social Security cards and all the rest of it? No, the false identity issue is, of course, the distinction. You're right, Your Honor. But the gravamen of the lockout is the same. And I think the real key issue here is that if there was a problem with this lockout, it should have been adjudicated by the National Labor Relations Board. And the only reason it wasn't is that we've resolved that issue along with the criminal issue in the key agreement that provided extensive relief to the plaintiffs. That is a go for the NLRB. That would take years and years and years. I won't be the NLRB spokesman right here on that issue. But I do think, and I would leave the panel with this thought, if the law of strikes and lockouts, which is really the core of the National Labor Relations Act, can't be submitted to juries, they can't rule this lockout was unlawful, and they can say what they want about the crimes that were involved, but the proximate cause of their injuries, the reason that they're here, is their allegation that the lockout injured me, and what they're seeking are lost wages because they were out of work because of the lockout and the labor dispute went on too long. And I think that's a classic under the labor practice. Unless the panel has any other questions, I'm willing to speak. I don't know if my time is up. Can I just have one minute, possibly? Sure. And I will be very brief in that. First of all, I know you always ask the question about the RICO and labor context. There are cases which we saw, including farmers in the Supreme Court case, where it is very common for there to be RICO applied in the labor context. The $50 million award, the $50 million fund, by the way, was not sufficient, and that's why this action is needed. It's also important to note that the district court, and I have it on record on page 28, found that the acts went from October of 2003 through December of 2006. So I know that the judge below found that this whole sequence of events lasted longer. And most importantly, and this is the last point I want to make, I'm here on an appeal where this issue was brought up on the opponent's brief, the response brief. And if your honors do find that we have not alleged sufficient details of the predicate acts, the remedy should not be a dismissal of prejudice, but it should be giving us the opportunity, because this would be the first time that this was brought to our attention, to have reclaimed and had that opportunity. Thank you, your honors. All right. Thank you. This matter is submitted. And we now go on to the next case, which is United States v. Munoz and Molina.
judges: Fletcher B. , Pregerson, Graber